## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAYTON MIBRODA, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 22-867 |
| | ) | |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| SUPERINTENDENT, SCI GREENE; | ) | Re: ECF No. 1 |
| THE ATTORNEY GENERAL OF | ) | |
| PENNSYLVANIA; *and* | ) | |
| DISTRICT ATTORNEY OF | ) | |
| WESTMORELAND COUNTY, | ) | |
| | ) | |
| Respondents. | ) | |

## OPINION

Clayton Mibroda ("Petitioner") is a state prisoner who, at the time of filing, was incarcerated at the State Correctional Institution at Greene ("SCI-Greene") in Waynesburg, Pennsylvania.[1] Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254 from his state criminal conviction for Murder of the Third Degree, in violation of 18 Pa. C.S.A. § 2502(c). He was convicted after a jury trial in the Court of Common Pleas of Westmoreland County, Pennsylvania, at Docket No. CP-65-CR-783-2012. ECF No. 1 at 1. See also Docket, Com. v. Mibroda, No. CP-02-CR-15304-2008 (C.C.P. Westmoreland Cnty.) (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-65-CR-0000783-2012&dnh=Of%2BDG26I7f%2F7tkLCvFodVw%3D%3D (last visited June 10, 2025)). Petitioner currently is serving a sentence of 15-30 years imprisonment. ECF No. 1 at 1; ECF No. 12-5 at 2.

---

[1] Petitioner currently is held at the State Correctional Institution at Fayette ("SCI-Fayette"), in LaBelle, Pennsylvania.

Currently before this Court is Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "Petition"), which was received by this Court on June 13, 2022. ECF No. 1. For the reasons that follow, the Petition will be denied. A certificate of appealability will be denied.[2]

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Relevant Facts

The following is a summary of the facts underlying Petitioner's criminal case as summarized Pennsylvania Superior Court in its Memorandum affirming the denial of post-conviction relief pursuant the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 et seq.

> On December 27, 2011, the Commonwealth charged Appellant with criminal homicide for the death of his 20-day-old daughter. Trial commenced on January 7, 2013, and on January 11, 2013, the jury convicted Appellant of third-degree murder. The trial court sentenced Appellant to 15 – 30 years of incarceration.

Com. v. Mibroda, No. 1361 WDA 2020, 2021 WL 2905823, at *1 (Pa. Super. Ct. July 9, 2021) (footnote omitted). The Superior Court provided more detail – which it adopted in large part from the trial court's order denying Petitioner's post-sentence motions – in its Memorandum denying Petitioner's direct appeal.

> The testimony at trial established the following. According to EMS personnel[,] [Appellant] was present with the lifeless infant and he was calm. [Appellant] stated to them that he was at home with the baby and [M]other was not home. When he fed the child[,] she was unresponsive. The ER nurse testified that [Appellant] said he was at home with the baby and [M]other was not home. When he fed the child[,] she was unresponsive. She also testified that at the

---

[2] The parties consented to the jurisdiction of a United States Magistrate Judge on March 20, 2025. ECF Nos. 6 and 25.

> hospital [M]other·was hysterical while [Appellant] was calm[.]
> Mother's testimony was that she left the baby sleeping with
> [Appellant] while she went·to see a doctor and was gone for a
> couple of hours. ([T]his fact was corroborated by both her
> grandmother and the physician). [Appellant] said he had fed the
> baby in the back room and when she [Mother] went in he told her
> to get out. The elected Coroner testified that [Appellant] told him
> that the baby had trouble breathing while he was feeding her.
> [Appellant] did not want an autopsy to be performed[.]·The cause
> of death was blunt force trauma to the head and chest with the
> manner of death being homicide.
>
> ***
>
> At trial, Appellant argued that Mother actually murdered the child.
> Appellant's Brief at 10. To this end, he sought to have evidence of
> her past drug use admitted. *Id.* Specifically, Appellant wanted to
> introduce evidence indicating that the child was born with opiates
> in her system due to Mother's use of drugs during pregnancy. *Id.* at
> 11-12. While Appellant conceded that the child's injuries at death
> were unrelated to the opiates found in the child's system at birth,
> he asserted that Mother's use of opiates while she was pregnant
> tended to show her lack of concern for the child. *Id.* at 12.

ECF No. 12-7 at 37, 38, and 43 (pages scanned out of order).

Petitioner was found guilty of Murder of the Third Degree by a jury on January 11, 2013.

ECF No. 12-4 at 95.  The trial court imposed sentence on April 16, 2013.  ECF No. 12-5 at 2.

Petitioner filed post-sentence motions with new counsel on April 26, 2013.  ECF No. 12-6 at 2-5.

These motions included six claims of ineffective assistance of trial counsel.  Id. at 4-5.

On April 29, 2013, Petitioner's trial counsel also filed post-sentence motions on

Petitioner's behalf.  Id. at 9-12.  Trial counsel was granted leave to withdraw on May 14, 2013.

Id. at 18.  The trial court held an evidentiary hearing on the post-sentence motions filed by new

counsel on July 1, 2013, at which Petitioner's trial counsel testified.  Id. at 19-20, 23.  The trial

court denied Petitioner's post-sentence motions – including his claims of ineffective assistance of

trial counsel – on August 20, 2013.  Id. at 58, 63.

**B.      Direct Appeal**

Petitioner timely filed a notice of direct appeal to the Superior Court on August 21, 2023. ECF No. 12-7 at 3.   This Notice of Appeal was filed by the same attorney who litigated Petitioner's post-sentence motions.  Id. at 4.  The appeal was dismissed on November 13, 2013 due to counsel's failure to file a timely docketing statement.  Id. at 23.   However, the Superior Court reinstated Petitioner's direct appeal rights at the same case number on Petitioner's motion on December 4, 2013.  Id. at 24.  See also Docket, Com. v. Mibroda, No. 1529 WDA 2013 (Pa. Super. Ct.) (available at https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=15 29%20WDA%202013&dnh=kk%2FR1VaG0PlYV1bluo0NqQ%3D%3D (last visited June 10, 2025)).

Petitioner initially raised the following issues on direct appeal.

> 1. The lower court erred in prohibiting testimony and evidence of the victim's mother's drug use and neglect of her children.
>
> 2. The verdict of guilty was against the weight of the evidence presented at trial.
>
> 3. Trial counsel was ineffective for failing to file a motion for change of venue.
>
> 4. Trial counsel was ineffective for failing to file a motion to sequester the jury.
>
> 5. Trial counsel was ineffective for failing to file a motion to suppress statements made by defendant.

Mibroda, No. 1529 WDA 2013, 2014 WL 10918076, at *2 (Pa. Super. Ct. June 17, 2014). However, he withdrew all issues except Issue No. 1 in his brief.  Br. for Appellant, Com. v. Mibroda, No. 1529 WDA 2013, 2014 WL 2880305, at *4 (Pa. Super. Ct. filed Mar. 8, 2014).

On June 17, 2014, the Superior Court remanded the direct appeal to the trial court to prepare an opinion pursuant to Pa.R.A.P. 1925(a) as to this issue.  Mibroda, 2014 WL 10918076,

at *3.  The trial court issued its opinion on June 25, 2014.  ECF No. 12-7 at 31, 36.  Relying on this opinion, the Superior Court denied relief as to this issue on the merits, and affirmed Petitioner's conviction on July 29, 2014.  Id. at 37, 40.  There is no indication on the record that Petitioner sought leave to appeal to the Pennsylvania Supreme Court.  Therefore, his conviction became final at the conclusion of the period of time for him to do so – 30 days later, on August 28, 2014.  Pa. R.A.P 1113.

**C.    PCRA Proceedings**

Petitioner timely filed a *pro se* Motion for Post Conviction Collateral Relief on May 11, 2015.[3]  ECF No. 12-8 at 2 and 80.  Petitioner asserted the following claims in his *pro se* PCRA petition.

> I. Trial and appellate counsel were ineffective for failing to argue that the court's ruling, excluding evidence of drug use, violated Mibroda's Confrontation Clause rights and his [Fourteenth Amendment Due Process] right to present a defense.
>
> II. Trial counsel was ineffective for failing to object to barred or prejudicial evidence or testimony.
>
> III. Counsel was ineffective in his failure to properly examine, or cross examine, certain witnesses.
>
> IV. Trial counsel was ineffective for failing to interview or call to testify certain witnesses.
>
> V. Counsel was ineffective for failing to move for change of venue and/or sequestration of the jury.
>
> VI. Counsel was ineffective for failing to make a motion to suppress pretrial statements.

---

[3] Because Pennsylvania applies the so-called "prisoner mailbox rule" to *pro se* PCRA petitions, see, e.g., Com. v. Little, 716 A.2d 1287, 1288-89 (Pa. Super. Ct. 1998), the effective date of filing appears to be May 11, 2015 – the date on the signature block of the petition's supporting brief. ECF No. 12-8 at 80.

VII. Counsel was ineffective in regards to inflammatory photographs.

VIII. Appellate counsel was ineffective for failing to pursue meritorious issues on direct appeal.

IX. Initial, pre-trial counsel abandoned Mibroda.

X. Cumulative ineffective assistance of counsel.

Id. at 13, 25, 36, 53, 63, 68, 73, 75, 78, 79.

Petitioner was appointed counsel, who moved to withdraw and filed a no-merit letter on November 25, 2015. ECF No. 12-9 at 4, 8. Of note, PCRA counsel in the No-Merit Letter interpreted Issue I – a claim that trial and appellate counsel were ineffective for failing to argue that excluding evidence of the victim's mother's prior drug use violated the Confrontation Clause – had been previously litigated as Petitioner's sole exhausted claim on direct appeal. Id. at 10. The PCRA trial court issued a Notice of Intent to Dismiss on January 22, 2016. Id. at 19. The reasoning of the PCRA trial court tracked with that of the No-Merit Letter in large part – particularly with respect to Issue I having been previously litigated on direct appeal. Id. at 19, 22-23.

Petitioner timely submitted objections to the Notice of Intent to Dismiss on February 5, 2016. Id. at 30, 39. In pertinent part, he denied that the claim at Issue I ever was presented as a constitutional claim in his post-sentence motions or on direct appeal; instead, it was presented solely as an erroneous evidentiary ruling. Id. at 30-32. He further argued that, counsel had been ineffective because, had the state court analyzed the claim under a Sixth Amendment framework, there was a reasonable probability that the result of his trial would have been different. Id. at 33.

The PCRA trial court held a hearing on April 20, 2016, at which Petitioner proceeded *pro se*, and his counsel – who had not yet been granted leave to withdraw – testified. ECF No. 12-10

at 2.  As a result of the hearing, PCRA counsel was granted leave to withdraw, and Petitioner was appointed new PCRA counsel.  ECF No. 12-11 at 4.

Shortly thereafter, on October 13, 2016, Petitioner's second PCRA counsel filed his own No-Merit Letter and Petition to Withdraw, which largely followed the reasoning of Petitioner's first PCRA counsel and the PCRA trial court's first Notice of Intent to Dismiss.  Id. at 5, 44, 46. The PCRA trial court held another brief hearing on October 28, 2016, at which the PCRA trial court informed Petitioner that it intended to issue another notice of intent to dismiss  Id. at 49, 56.  Petitioner's second PCRA counsel was allowed to withdraw the same day.  Id. at 59.

The PCRA trial court issued a second Notice of Intent to Dismiss on November 4, 2016. Id. at 61.  Once again, the PCRA trial court opined that Issue I had been previously litigated on direct appeal.  Id. at 65-66.  Petitioner objected thereto on November 14, 2016.  Id. at 125.

On March 9, 2018, Petitioner submitted a *pro se* "Amended Memorandum of Law in Support of Post-Conviction Relief," in which he asserted the following issues.

> I. Trial and Appellate counsel were ineffective for failing to argue that the Court's ruling, excluding evidence of drug use, violated Mibroda's Confrontation Clause rights and his Right to Present a Defense.
>
> II. Trial counsel had no reasonable trial strategy in mind and , prejudiced Mibroda in failing to request an accomplice "CORRUPT SOURCE" jury instruction pertaining to Commonwealth witness, Kayla Lichtenfels, during Mibroda's trial. This violated Mibroda's constitutional right to effective assistance of trial counsel as guaranteed by Article 1 §9 of Pennsylvania's Constitution, and the 6th and 14th Amendments to the U.S. Constitution.
>
> III. Counsel was ineffective for failing to make a pre-trial motion to sup[p]ress Mibroda's pre-trial statements.
>
> IV. Counsel was ineffective in his failure to properly examine, or cross-examine, certain witnesses.

7

V. Trial counsel was ineffective for failing to interview or call to testify certain witnesses.

VI. Counsel was ineffective for his failure to secure and present exculpatory evidence contained in pre-trial counsel's case file. The jury never heard evidence of the ALTERNATE SUSPECTS motive to commit the crime that Mibroda was convicted of.

VII. Counsel was ineffective for failing to object to barred or prejudicial evidence/testimony.

VIII. Counsel had no reasonable strategy in mind, which prejudiced Mibroda, for failing to file a pre-trial Omnibus Motion, or object to unduly prejudicial autopsy photographs being admitted into evidence.

IX. Appellate Counsel was ineffective for falling to pursue meritorious issues on direct appeal.

X. Cumulative Ineffective Assistance of Counsel.

ECF No. 12-13 at 6, 17, 21, 29, 40, 53, 56, 62, 65, 68.

On the same date, the PCRA trial court conducted a hearing, the ostensible reason of which was for Petitioner to argue why the PCRA trial court's prior Notice of Intent to Dismiss had been erroneous. ECF No. 12-14 at 2, 4. However, in response to assertions of newly-discovered evidence made by Petitioner at the hearing, the PCRA trial court allowed Petitioner to file further amendment to his already amended PCRA petition. Id. at 18. At the hearing, the PCRA trial court opined that the claims in the initial *pro se* PCRA petition lacked merit. Id.

Petitioner followed with the filing of a "Supplemental Amendment to Petitioner's First Amended Petition" on March 23, 2018, which raised the following, additional claims.

XI. THE COMMONWEALTH SUPPRESSED BRADY MATERIAL BY WITHHOLDING THAT BRANDON GREEN WAS INTERVIEWED BY THEIR INVESTIGATORS OR THE PA STATE POLICE.

XII. Ground V: Trial counsel was ineffective for failing to interview or call to testify certain witnesses. Ground VI: Trial

8

> counsel was ineffective for failing to secure and present evidence
> of Kayla's motive to commit the crime for which Mibroda was
> convicted of.

Id. at 95, 97 (issues renumbered for clarity; text formatting as in the original).

These two issues related to an individual named Brandon Green ("Green"), a friend of Petitioner who appears to have been romantically involved with the mother of the victim. According to Green, sometime after the victim's murder, the mother informed him that the victim's death had been an accident, that Petitioner had lied to the police in order to protect the mother from prison, and that the mother had done what she had in order to be with Green. Id. at 94. See also ECF No. 2-3 at 2-5. Green also stated in his declaration that he had been interviewed by "two men from 'Westmoreland County[,]'" who "asked [him] what seemed a hundred questions[,]" and who terminated the interview when Green admitted that he would lie for Petitioner under the right circumstances. ECF No. 2-3 at 3. Green stated that he did not inform these individuals of the victim's mother's alleged statements to him. Id. at 3.

New Issues II, XI and XII were not raised in the initial *pro se* PCRA petition, and were not addressed in the PCRA trial court's prior Notices of Intent to Dismiss that petition.

On July 2, 2018, the PCRA trial court appointed yet another attorney to represent Petitioner – his third in the PCRA proceedings. ECF No. 12-14 at 26. The appointment was somewhat limited by the PCRA trial court.

> Appoint Timothy Andrews to look into this issue. To Interview:
> Mr. Green, Mr. Fox [first PCRA counsel], Mr. DeMatt [second
> PCRA counsel], + Mr. McGrew and/or Mr. Hoffman [trial
> counsel].

Id.

The PCRA trial court held yet another hearing on July 31, 2019. ECF No. 12-15 at 2. At the hearing, Petitioner's third PCRA attorney addressed the scope of his representation.

> MR. ANDREWS: . . . . But the last time we were actually here
> with Ms. Jollie, you had asked, I believe the Commonwealth, over
> the Commonwealth's objection, for me to look at his, I believe Mr.
> Mibroda was on video, and he had requested a review of his
> amended PCRA. He had already had two prior counsel look
> through it. You had asked me to do that. I did do that. Even though
> he feels that there are some issues in this that should be addressed,
> I advised him that I didn't see anything in the amended PCRA that
> I thought I would be able to address under the standards set forth
> for counsel and those types of cases. So we're here on the issue of
> Mr. Green's letter and how that can transpire. Now based upon
> some discussions we had in chamber's, depending on Mr. Green's
> testimony, it may not just be after discovered evidence, it may be
> another issue, but we'll wait to see what he testifies to and go from
> there.
>
> THE COURT: So it's going to be limited then to the issue of the
> letter that was written by Mr. Green, and possibly, in the context of
> whether there was someone else involved that may have
> interviewed Mr. Green.
>
> MR. ANDREWS: Essentially the testimony of Mr. Green that he's
> going to present to the Court today, in it relates to that letter and
> issues that came up in that letter.

Id. at 4-5.

On August 21, 2020, another hearing was held to discuss additional evidence regarding

Green and his alleged interview with individuals from Westmoreland County. ECF No. 12-16 at

2. During that hearing, the following exchange took place.

> MR. ANDREWS: . . . . So, with that, the only additional item,
> besides from my witness then, would be that Mr. Mibroda had
> indicated, we had had discussions through the mail and through
> emails with his mother, who has contact with him, about this
> particular matter. And it was my position and interpretation of the
> case since Ms. Jollie has brought this out, I think you had brought
> this out, Judge, that there had been two prior reviews, and those
> attorneys determined they could not find any merit. So I limited,
> and I believe it was restricted on limiting the case here to the
> possibility that that is newly discovered evidence that may, in fact,
> fit into that manner.

Mr. Mibroda had requested that I also raise issues regarding inconsistencies and credibility issues with the mother of the child. And he wanted to put·that on the record that he had requested that·of me, and I've already advised him I didn't think that we could do that at this point. And I also advised that even under a regular PCRA, the mere challenge to inconsistent testimony is not something that is raised in the Post- Conviction Relief Act petition.

THE COURT:  Okay.

MR. ANDREWS:  Is that correct, Mr. Mibroda? Would you like to say anything about that?

THE DEFENDANT:  Yeah. If I could just get this on record real quick with you here, Your Honor. First, thank you for having me by video. It's much appreciated. I do agree with Mr. Andrews as to the strategy that he is arguing the new evidence of Brandon [Green]'s testimony. I just wanted to get on record that I voiced my disagreement with Mr. Andrews as not including the certain relatable claims into the proceedings as far as ineffective assistance of counsel for trial counsel not bringing up during trial, like questioning the alternate suspect, the mother, why all these, she made all these inconsistencies in her police statements and even during her direct and cross-examination. And also ineffective assistance for not requesting a corrupt source jury instruction for the alternate suspect.

Now·it's Mr. Andrews', ·it's his legal opinion, and I respect that, it's just I'm in a difficult position where if I just let these go, then what's that to say for me later on down the road? That's all I'm worried about, Your Honor.

THE COURT:  All right. So the additional issue that you wish to raise that Mr. Andrews is not raising for the reason that he just stated would include failure of your trial counsel to ask for a corrupt source jury instruction. That's the first thing, right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right. And the second issue would be the failure of your trial counsel to adequately cross-examine the mother of the child in this case to point out to the jury inconsistent statements that she made?

THE DEFENDANT:  Yes, that is correct, Your Honor.

Id. at 6-8.

The PCRA trial court gave counsel permission to address those two additional matters.

> THE COURT:  Well, any other -- as far as clearing it up, I just, I'm
> giving you permission through Mr. Andrews to address those two
> additional matters.
>
> THE DEFENDANT:  Okay.
>
> THE COURT:  All right?
>
> THE DEFENDANT:  Okay. Yes, Your Honor.
>
> THE COURT:  So anything else? Any other issues that you feel
> have not been addressed by your attorney?
>
> THE DEFENDANT:  No. He has addressed every one of them
> with me personally.

Id. at 13.

On September 17, 2020, Petitioner's third PCRA counsel submitted a final supporting
brief. Id. at 27, 44.  In it, he acknowledged the history of the PCRA proceedings, and that he had
been appointed to look into the issue of Green's letter. Id. at 30.  He also acknowledged that the
PCRA trial court had directed counsel to review:

> two other issues raised by the Defendant at the time of this most
> recent hearing in August of 2020. Specifically Counsel was asked
> to review whether there was an issue of ineffective assistance for
> Trial Counsel's failure to request a corrupt source instruction
> regarding the Mother of Natalee, Kayla. There was also a request
> to look at the Defendant's other claim for potential ineffectiveness
> based on an allegation that trial Counsel failed to adequately cross-
> examine Kayla.

Id. at 30-31.  Petitioner's third PCRA counsel indicated that he found no merit to either of these
two additional issues. Id. at 42-43.

On December 1, 2020, the PCRA trial court issued an Opinion and Order dismissing the
amended PCRA petition.  Id. at 57, 68.  The PCRA trial court recited the procedural history of

the lengthy PCRA proceedings and stated that, in response to Petitioner's *pro se* amended PCRA petition and supplement, it "appointed [Third PCRA counsel] to review the newly raised issues. Specifically, the Court limited the issues to (1) after discovered evidence, (2) trial counsel's failure to request a corrupt source jury instruction, and (3) trial counsel's alleged failure to adequately cross-examine Kayla Lichtenfels." Id. at 59.  It then addressed the merits of only those three enumerated issues.  Id. at 64-67.

Petitioner, through his third PCRA counsel, timely filed a notice of appeal to the Superior Court on December 7, 2020.  ECF No. 12-17 at 2-3; Docket, Mibroda, No. CP-65-CR-783-2012. On December 14, 2020, Petitioner was ordered to file a Concise Statement of Errors Complained of on Appeal.  Id. at 8.  Petitioner complied on December 18, 2020, raising the following two issues.

> 1. Did the Lower Court err in determining that the Defendant was not eligible for relief based upon after discovered evidence.
>
> 2. Did the Lower Court err in determining that the evidence presented did not meet the standard for after discovered evidence.

Id. at 10-11.

On January 5, 2021, the PCRA trial court issued an order incorporating its Order dated December 1, 2020, as its opinion pursuant to Pa. R.A.P. 1925.  Id. at 12-13.

On July 9, 2021, the Superior Court addressed the following, single issue:

> [W]hether the PCRA court erred "as a matter of law in determining [Appellant] was not eligible for relief based upon after discovered evidence?"

Mibroda, 2021 WL 2905823, at * 2.[4]  If affirmed the denial of post-conviction relief.  Id. at *1.

Thereafter, Petitioner sought leave from the Pennsylvania Supreme Court to appeal, but *allocatur*

was denied on May 3, 2022.  ECF No. 12-17 at 20.

## II.    FEDERAL HABEAS PETITION

Petitioner initiated this federal habeas action on June 13, 2022, with the filing of the

Petition.  ECF No. 1.  The Petition includes a declaration indicating that it was placed in the

prison mailing system on May 29, 2022.  Id. at 16.  Accordingly, the Petition was constructively

filed on May 29, 2022.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) ("we hold that a pro

se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for

mailing to the district court.").

Petitioner also filed a supporting brief on June 13, 2022.  ECF No. 2.  Respondents

answered the Petition on November 28, 2022.  ECF No. 12.  Petitioner timely filed a Traverse to

Respondents' Answer on January 20, 2023.  ECF No. 21.

In the pending Petition, Petitioner asserts the following grounds for federal habeas relief.

Ground One:  The Commonwealth committed a Brady violation where it withheld
exculpatory evidence favorable to the Defense.

Supporting facts[]:

Before trial, the Commonwealth interviewed Brandon Greene who,
according to sworn statements and testimony, told the investigators about
several incriminating statements and behavior, among other things, by the
victim's mother.  This evidence at trial would have completely
contradicted the Commonwealth's main witness, and pointed the jury to
the real perpetrator.

The Commonwealth never disclosed the interview.

ECF No. 1 at 5.

---

[4] This quote from the Superior Court's Memorandum references Petitioner's appeal brief.
Respondents failed to include that brief in the certified record.

Ground Two:    Ineffective assistance of counsel where counsel failed to interview and/or call a witness who had exculpatory evidence of another suspect.

Supporting facts[]:

Before trial, Petitioner informed trial counsel that pre-trial counsel possessed information concerning incriminating statements and [behavior] by victim's mother to or around Brandon Greene. Counsel was also made aware· of an investigation performed by DEA Investigations that revealed more incriminating information about victim' s mother. Yet, trial counsel failed to even interview Greene, let alone call him as a witness.

Id. at 7.

Ground Three:    Ineffective assistance of counsel where counsel failed to argue [that the] exclusion of the victim's mother's drug use was a violation of Petitioner's right's under the Confrontation Clause.

Supporting facts[]:

When the trial court excluded any evidence of the victim's mother's drug use, trial and appellate counsel failed to argue that this was a violation of Petitioner's right to confront his accuser, and limited his ability to cross-examine and impeach the credibility of the only person to accuse Petitioner of this crime. ·

Id. at 8.

Ground Four:    Ineffective assistance of counsel where trial counsel failed to object to the admission of highly prejudicial and irrelevant testimony.

Supporting facts[]:

Evidence of an injury to the child's frenulum, that all sides agreed was at least three days old and had nothing to do with the child's death, should have been excluded. The pictures of the injury and the size of the Petitioner's hands was irrelevant and highly inflammatory and was designed solely to prejudice the Petitioner in front of the jury.

Id. at 10.

Ground Five:    Ineffective assistance of counsel where counsel failed to object to the admission of and/or request a cautionary instruction related to the showing of inflammatory and prejudicial photographs.

(a) Supporting facts: In a case where the defense did not argue cause of death, it was highly prejudice[i]al to show the jury autopsy photos of the

child and counsel was ineffective for failure to put restrictions and a list of which photos would be shown on-the-record before testimony began. Counsel was further ineffective for failing to request a cautionary instruction concerning the photos.

Id. at 12.

Ground Six:    Ineffective assistance of counsel where counsel failed to properly examine or cross-examine certain witnesses.

(a) Supporting facts: Counsel failed to examine or cross-examine the following witnesses, with known information, essentially leaving the Commonwealth's case unchecked: Kayla Lichtenfels; Bonnie Rudger; and Trooper Lipniskis.

Id.

The Petition is ripe for adjudication.

## III.    PROCEDURAL ISSUES

Before this Court considers the merits of Petitioner's federal habeas claims, it will address whether the Petition fulfills the applicable procedural requirements, as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### A.    The AEDPA Statute of Limitations

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed within the applicable statute of limitations. In 1996, Congress enacted the AEDPA, which generally established a strict one-year statute of limitations for the filing habeas petitions pursuant to 28 U.S.C. § 2254. The applicable portion of the statute is as follows:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under Section 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. See, e.g., Munchinski v. Wilson, 807

F. Supp. 2d 242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No 99-5, 2004 WL 825858, at *3 (W.D. Pa. Mar. 10, 2004)).

In their Answer, Respondents concede that the Petition is timely under the applicable statute of limitations. ECF No. 12 at 11. A review of the record, as set forth above, supports this conclusion. Therefore, Petitioner's claims are timely filed.

**B.      Exhaustion And Procedural Default**

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. In order to exhaust a claim, "a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 260-61 (3d Cir. 1999). "It is not sufficient that all the facts necessary to support the federal claim were before the state courts . . . and mere similarity of claims is insufficient to exhaust." Keller v. Larkins, 251 F.3d 408, 413-14 (3d Cir. 2001) (internal citations and quotations omitted).

Moreover, a petitioner must present every claim raised in the federal habeas petition to the state's trial court, intermediate appellate court, and highest available court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). In Pennsylvania, petitioners afford the state courts that opportunity by fairly presenting their claims to the trial court and to the Superior Court, either on direct review or on appeal of a petition for relief under the PCRA. Lambert, 387 F.3d at 232-34; see also Rodland v. Sup't of SCI Houtzdale, 837 F. App'x 915, 919 (3d Cir. 2020).

A petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). The petitioner has the

burden of establishing that the exhaustion requirement has been met.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

In the case at issue, it is clear that Petitioner's claims are exhausted at the state court level at the very least in the sense that there is no state avenue for relief available to him due to the PCRA's one-year statute of limitations.  See 42 Pa. C.S.A. § 9545(b).

However, beyond the question of exhaustion, a federal court may be precluded from reviewing habeas claims under the "procedural default doctrine."  Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 60-61 (2009)); Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996).  This doctrine is applicable where, *inter alia*, a petitioner's claims are "deemed exhausted because of a state procedural bar[.]" Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000).  Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment.  Coleman, 501 U.S. at 750.

The PCRA's one-year statute of limitations has been held to be an "independent and adequate" state law ground for denying habeas relief.  Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002).  So too has the requirement under 42 Pa. C.S.A. § 9544(b) that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."  Garcia v. Adams, No. 17-CV-5249, 2019 WL 8015127, at *6 (E.D. Pa. Aug. 27, 2019), report and recommendation adopted, 2020

WL 868200 (E.D. Pa. Feb. 20, 2020), aff'd sub nom. Garcia v. Sup't Forest SCI, No. 20-1570, 2022 WL 1153122 (3d Cir. Apr. 19, 2022) (citing cases).    Additionally, waiver due to a petitioner's failure to recite a claim in a statement of questions section in his state court appeal brief has been held to be independent and adequate ground for procedural default  Stringer v. Folino, No. 13-221, 2016 WL 836347, at *13-14 and n.16 (W.D. Pa. Feb. 1, 2016) (citing Pa. R.A.P 2116(a)), report and recommendation adopted, 2016 WL 826016 (W.D. Pa. Mar. 3, 2016).

Here, Respondents argue that Petitioner failed to fairly present his pending federal habeas claims to the state courts, and that they are procedurally defaulted here as a result.  ECF No. 12 at 17-18.  A review of the record in this case indicates that Respondents are correct.

The sole claim that was exhausted on direct appeal was:

> I. Whether the lower court erred in granting Appellee's Motion to Exclude Evidence in regard to drug evidence.

Mibroda, 2014 WL 2880305, at *4.  This was argued as an erroneous evidentiary ruling, and not as an issue of federal law or a federal constitutional right.  Id. at *2.  See also ECF No. 12-7 at 43.

In his PCRA appeal, Petitioner – through counsel – raised the following issues in his Concise Statement of Errors Complained of on Appeal

> 1. Did the Lower Court err in determining that Defendant was not eligible for relief based upon after discovered evidence.
>
> 2. Did the Lower Court err in determining that the evidence presented did not meet the standard for after discovered evidence.

ECF No. 12-17 at 10.  The Superior Court, in turn, addressed the following issue in its Memorandum affirming the denial of post-conviction relief.

> [W]hether the PCRA court erred "as a matter of law in determining [Appellant] was not eligible for relief based upon after discovered evidence?"

Mibroda, 2021 WL 2905823, at *2.  This was analyzed as an issue of state law by the Superior Court.  Id. at *2-3.

None of the issues raised by Petitioner before the Superior Court – either on direct appeal or PCRA appeal – fairly presented any of Petitioner's federal habeas claims.  Moreover, because he now may not raise the instant grounds for relief in state court, they are procedurally defaulted. 42 Pa. C.S.A. § 9545(b).

But that is not the end of the inquiry.  The United States Supreme Court has held that where a petitioner has to failed to follow state procedure within the required time period, the "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; see also Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977) (failure to follow state's procedural rules results in procedural default, which bars federal review of petitioner's claims unless he can show cause and prejudice); Hull v. Freeman, 991 F.2d 86, 90-91 (3d Cir. 1993) (same).  The Supreme Court in Coleman further recognized "the important interest in finality served by state procedural rules and the significant harm to the States that results from the failure of federal courts to respect them."  501 U.S. at 750.

The Supreme Court has defined "cause" as "some objective factor external to the defense."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list.  Id.

Petitioner argues that he raised all of the grounds for relief asserted in the instant federal habeas petition in his *pro se* PCRA filings – either his initial *pro se* petition, his Amended

21

Memorandum of Law in Support of Post-Conviction Relief – which Petitioner characterizes in his filings as an amended PCRA petition – or his so-called Supplemental Amendment to Petitioner's First Amended Petition. ECF No. 2 at 6. The fact that these claims were not raised in his PCRA appeal allegedly was the result of ineffective assistance of PCRA counsel. Id. Thus, Petitioner asserts that cause to set aside any procedural default may be established according to Martinez v. Ryan, 566 U.S. 1 (2012). ECF No. 21 at 4.

In Martinez, the United States Supreme Court created a limited equitable rule wherein ineffective assistance of post-conviction counsel can establish cause to set aside the default of "a substantial claim of ineffective assistance at trial[.]" 556 U.S. at 17.

The Martinez exception applies only under specific circumstances where post-conviction counsel is ineffective for failing to raise such a claim on collateral review. As this Court has previously explained:

> The decision of the United States Supreme Court in Martinez v. Ryan created a sea change in the doctrine of procedural default, holding for the first time that a claim of ineffective assistance of post-conviction relief counsel could serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness. However, the Supreme Court in Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013) explained that Martinez only permits a federal habeas court to find "cause" based on post conviction counsel's ineffectiveness and "thereby excus[e] a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that an 'ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

Taylor v. Pennsylvania, No. 15-1532, 2018 WL 446669, at *9 (W.D. Pa. Jan. 16, 2018). A claim is "substantial" when it has "some merit," analogous to the standard for a certificate of

appealability.  Martinez, 566 U.S. at 14.  See also Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014).

As such, the Martinez exception cannot be used to provide "cause" for Petitioner's direct Brady claim at Ground One, because it is not an ineffective assistance of trial counsel claim. Nor does Martinez apply to claims of ineffective assistance of direct appeal counsel.  Davila v. Davis, 582 U.S. 521, 526-27 (2017).  Thus, to the extent that Petitioner includes a claim of ineffective assistance of direct appeal counsel in any asserted ground for relief, see ECF No. 2 at 16, Martinez provides no basis for cause to set aside his procedural default.

As to Petitioner's ineffective assistance of trial counsel claims, a review of the record indicates that Petitioner raised each of them to the PCRA trial court.  Petitioner's Amended Memorandum of Law in Support of Post-Conviction Relief – which Petitioner characterizes as an amended PCRA petition – and his supplement thereto comprised the operative pleadings in the PCRA trial court.  Additionally, no amended PCRA petition was filed by any of Petitioner's multiple PCRA counsel that would remove those claims from the purview of the PCRA trial court.  At the time that post-conviction relief was denied by the PCRA trial court, each of the issues raised in those pleadings was properly before the state court.

However, Petitioner's PCRA counsel failed to raise any of those ineffective assistance of counsel claims in Petitioner's PCRA appeal – focusing instead on claims of after-discovered evidence, which are not asserted in any of the grounds for federal habeas relief in the instant proceeding.  Thus, to the extent that PCRA counsel's allegedly ineffective performance resulted in default of any claim of ineffective assistance of trial counsel, it was on collateral appeal before the Superior Court.

But it is well-established that <u>Martinez</u> does not apply to attorney error causing procedural default on collateral appeal. <u>Pritchett v. Sup't, SCI Laurel Highlands,</u> No. 2:16-CV-1751, 2020 WL 1643385, at *12 (W.D. Pa. Apr. 2, 2020) (quoting <u>Norris v. Brooks</u>, 794 F.3d 401, 405 (3d Cir. 2015) ("<u>Martinez</u> made very clear that its exception to the general rule of <u>Coleman</u> applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals.")). Accordingly, <u>Martinez</u> does not provide a basis to set aside the procedural default of any of Petitioner's claims.

After a thorough review of the record in this case, the undersigned can discern no other basis to set aside Petitioner's procedural default. Accordingly, the Petition, ECF No. 1, will be denied on the basis of procedural default.

## IV.    CERTIFICATE OF APPEALABILITY

A certificate of appealability will be denied, as jurists of reason would not debate that this Court was correct in its procedural ruling and/or that the defaulted claims state a valid claim of a denial of a constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000).

## V.    CONCLUSION

For the foregoing reasons, the Petition, ECF No. 1, will be denied. A certificate of appealability likewise will be denied.

An appropriate order follows.

Dated: June _10_, 2025                     BY THE COURT,

                                            MAUREEN P. KELLY
                                            UNITED STATES MAGISTRATE JUDGE

cc:    Clayton Mibroda
        LA1879
        SCI Fayette
        50 Overlook Drive
        LaBelle, PA 15450

        All counsel of record (*via* CM/ECF)